Good morning, your Honorable Mr. Welch, Mr. Welch, Mr. Welch, Mr. Welch, Mr. Welch, Mr. Good morning, your Honors. Gretchen Gristel here today on behalf of Appellant Chris Maurice Welch. We raised three issues on appeal. First, the District Court's error in declining to suppress the unlawfully obtained DNA evidence. Two, the District Court's error in admitting improper propensity evidence that four weeks after the charge of offense, Mr. Welch was found allegedly in the possession of synthetic marijuana. And three, the government's failure to meet its burden of proof as to the essential element, knowledge of status, under Rehave, that was raised in Appellate's motion to file a supplemental brief. Can I ask one question about the scope of the issues, which is you also make the issue, or you also argue about the probable cause for the arrest, but I understand that to be in the context of the DNA swab and the inevitable discovery issue. Is that right, or do you make an independent claim challenging probable cause? Yes, your Honor. The probable cause challenge for the appeal purposes as it relates to the obtaining the DNA sample. Thank you. And I'd like to focus this morning on the DNA evidence. It is clear that law enforcement obtaining a DNA sample from a suspect is a search under the Fourth Amendment under Maryland v. King. And in this case, the DNA sample obtained from Mr. Welch on March 27, 2017, was unlawfully obtained in violation of his Fourth Amendment rights because, one, it is undisputed that law enforcement did not have a warrant to obtain a DNA sample from Mr. Welch. Two, Mr. Welch did not provide voluntary consent to the search, and three, the government has not met its burden to avail itself of the inevitable discovery doctrine. Counsel, could we go ahead and jump to that third prong? I think you have a pretty good argument that it was not consensual, but if the arrest was legal, wasn't it inevitable? Your Honor, I believe there's two issues with the government availing itself of the inevitable discovery doctrine here to dispense with the warrant requirement. First is, as Judge Strauss mentioned, we challenged the probable cause to arrest, that the arrest in this case was unlawful because the probable cause was insufficient. I think the second issue, and probably the more important one for the court, is even if the court were to view the arrest as lawful, I don't feel the government has met its burden to show that the DNA sample would be taken subject to the arrest. As the court is aware, the government has the burden to show that there's a reasonable probability that the evidence would have been discovered by lawful means in the absence of the misconduct, and that the government was actively pursuing a substantial alternative line of investigation under Connor. Now, here, the government has failed to put in evidence to support the court's finding that the DNA sample would have been inevitably discovered during the booking process. Well, the government's brief talks about it's routinely granted, a warrant is routinely granted if a sample is denied during booking. Is that just an assertion, or is there evidence of that before the district court? Your Honor, the evidence that the government put on regarding this issue consisted of simply 10 lines of testimony during the motions hearing. The government asked Case Agent Warner if the subject had not agreed to provide a DNA sample, what was his normal course of practice, I'm sorry, I'll quote it, what in your normal course of practice would you have done? Officer Warner responded, I then apply for a search warrant that requires him to provide a sample. The government then asked, have you done that in the past? Yes, and discussed that he had done it many times. He then asked Officer Warner if in circumstances like this, he... Well, then we have an implicit finding that that was credible. What is there to counter it? Well, the credibility of the officer, yes, we don't have a record to challenge... Not that the officer's credible, the court accepted as sufficiently established the truth of what he said. Apparently there wasn't anything to the contrary in the record. Your Honor, there may not have been anything to the contrary in the record, however, I believe that the court erred in finding that. The district court's determination that the DNA swab would have been inevitably discovered appears to have relied on Marilyn V. King and the booking process. However, there is no evidence in the record of the booking process of Hennepin County. There is no evidence in the record that either of the three defendants that were arrested at the scene and were then booked in the Hennepin County Jail had a DNA sample taken at the jail, or that that's part of the process. And in my experience, officers, it's not from my experience in Hennepin County. What about the consent issue? I know that Judge Graz alluded to it, but this is a cordial conversation from what I can tell. There's no coercion. Now, maybe you could argue that he was somehow duped or didn't get Miranda warnings or whatever, but what's your best argument that there was no consent here? Yes, Your Honor, the consent here, as we've briefed, we allege is not consent because the government cannot simply rely on acquiescence to a claim of lawful authority. In this case, Mr. Welch was in custody. He had been taken in isolation to a bedroom with one armed officer. The officer told him that it's customary when they do a search warrant and they find guns in the house to try and take DNA evidence from whoever is in the house. He did not at that point inform Mr. Welch. And then Mr. Welch said, well, you've already got my DNA in the system. And he said something to the effect of, well, we need to do it anyway. It's basically, it's procedure. Yes. And then there was not compliance or at least not resistance. That's my understanding from the briefs. Well, Your Honor, it is correct that Mr. Welch, well, Officer Warner did not inform Mr. Welch when he said that his DNA was already in the system. At no point did Officer Warner inform her. You have the right to refuse this? Yes, Your Honor. Under Allison, that's correct. However, we assert that this case is more akin to Pena-Sies where not only did the officer fail to inform the defendant, or excuse me, the suspect of a right to refuse consent, but also misled the defendant into believing that this is common practice and that he didn't have a right to, did nothing to assuage fear, the assumption that he had no choice. What's the standard of review here, though? Isn't it clear air? And that's the problem I'm having. I mean, even if I would agree with you that there's no consent here, don't we have to defer to what the district court found because it's a factual finding? It is a factual finding, although I would say that the clear air in here of admitting the DNA evidence based on consent certainly affected the defendant's substantial rights. At trial, the government relied in its opening statement and its closing argument very heavily on the DNA evidence, and in fact said that he was charged, in closing argument stated that he was charged because his DNA was on the gun. Your Honor, I would submit that without the DNA evidence, the substantial rights of the defendant would certainly have been affected. And if I'd like to reserve the rest of my... Based on the trial testimony, or is it the notion that they wouldn't have charged him without the DNA? Well, I think both, Your Honor. I don't think that wouldn't have charged him. What case says that's enough to overturn a suppression ruling? That may not be enough on its own, but Your Honor, I'd submit that the evidence that was put forth at trial, you have three gentlemen that were found in the home, all who were felons in possession. Only my client was charged, and the government's own words in trial were he was charged because his DNA was on the gun. I'd submit that the evidence here without that DNA evidence would have been insufficient. And I'd like to remain, excuse me, reserve the rest of my time for rebuttal. Very good. Mr. Paulson. Good morning, Your Honor. It's Jeff Paulson for the United States. I did try this case in the district court, and jumping right to the DNA issue, it wasn't argued right now, but I do want to emphasize that there was ample probable cause for the arrest. Both the magistrate judge and the district court found that. It was based not only on the CRI information that Welch was selling, selling drugs out of this house and storing drugs there, which was confirmed by a photograph, but it was corroborated by the investigation. They did surveillance at that house, saw Mr. Welch there the night before the search, saw a lot of short-term traffic to and from the house. But most importantly, when they go in there with the search warrant, Mr. Welch is huddled in a back bedroom with the co-conspirators. They'd all broken their cell phones in half, which is pretty incriminating conduct. They search Mr. Welch, and they find he's got almost $500 in $20 bills on him, and it was established that this marijuana they were selling goes for $20 a bag, and there's a whole bunch of synthetic marijuana in the house, and the guns are in plain view in a kitchen closet. So there was ample probable cause to arrest him. And then as far as the consent goes, the conversation was completely cordial. I just listened to it again last night, and if it's in the record, I urge you to listen to it. They're joking, they're talking about the Maury Povich show. Mr. Welch, when asked to give a sample, says, well, my DNA is already in there. It wasn't in the form of denying or refusing. It was in the context of, you know, save yourself some time. You've already got my DNA. It wasn't an affirmative response. Pardon me? It certainly wasn't an affirmative response that he was consenting. Well, actually, the district court found that it was an affirmative response, and the officer testified without contradiction at the motions hearing that it was an affirmative response. When the officer explained to him that even though you're already in the system, we have to take a new one each time, Welch didn't dispute that, didn't disagree, basically just opened his mouth and let the guy take the sample. Isn't that just acquiescence to authority? Well, there was no claim of authority like there was in the case the defense relies on. In that case, it was an airport stop. And the woman three times refused the pat-down search. Three times I asked, and she refused. And then they did it anyway. Well, they said, we're going to do it anyway, and she said, okay, go ahead and do what you have to do. That was not consent. And that defendant testified at the motions hearing and made that record. Welch did not testify at the motions hearing. So all that you have in the record is the officer's sworn testimony that he consented and is corroborated by the audio tape, which the district court listened to and made a finding that the interview was calm and cordial, those are quotes, that Welch complied without hesitation and that he, quote, was cool with the officer taking his DNA sample. So there really is no basis in the record to overturn that finding. When Welch was told that it was customary for everyone in the house to be given a buccal swab or a DNA sample, was that truthful or was that deception? No, it was truthful. I mean, based on the officer's experience, he does these all the time. And when you go in there and you find convicted felons. Did that apply to the, I believe there was a mother and children in the premises as well. There probably would not have gotten a DNA swab from the child. But it was not accurate. I don't know if they did it from the mother. But they did it from all three suspects who were huddled in the back bedroom with the broken cell phones. But that's not what Welch was told. Well, what he was told was that, let's see. As he testified, he said, I told Mr. Welch that it's customary for us to take people's DNA when we do search warrants, find firearms, and we find prohibited people around these firearms. So I asked him, who was a prohibited person, if he would give me a DNA sample. Question, did he agree to give one? Yes. That's the state of the record. So I don't think there was any deception at all. And it wasn't a statement by the officer that either you consent, or you have to consent, you have no choice. There's nothing like that. It was, do you mind if I take one? And to put this in context, Welch had been Mirandized. He's very experienced with the criminal justice system. He's given DNA samples three times before. And importantly, he had just told the officer, I'm just a visitor here. I don't know nothing about guns. I know nothing about drugs. I'm just a visitor here. Well, okay, will you give a DNA sample? At that point, it's in his interest to say, sure, go along with it, because that's his defense. I've got nothing to hide. I'm just a visitor here. So he wasn't tricked into doing this. This was his own choice. Yeah. It's at page 20 of the motion hearing transcript. Question, hypothetically, if Mr. Welch had not agreed to give you a DNA sample voluntarily, what in your normal course of practice would you have done? Then I'd apply for a search warrant that requires him to provide a sample. And have you done that in the past? Yes. How many times? Over 50 times. Question, and in circumstances like this where someone is a felon and arrested in proximity to guns and drugs, have you ever been turned down on a DNA warrant like that? No. And a follow-up, can you remember ever being turned down on a DNA warrant at all? No. The point is that the Supreme Court has said you don't need to get a warrant. Maryland v. King says if you're arrested for a serious crime, you don't have the right not to consent. You've got to give one as part of the booking process. Now, in Hennepin County, they're a little more protective of defendants' rights. If you won't give one voluntarily, we go get a search warrant. And it's routine. This officer's never been turned down in over 50 occasions. Is that a problem, though? I mean, you rely on the district court and the magistrate judge rely on Maryland v. King, as I recall. And I think it's this case. And really don't get into the warrant issue and the fact that it's not a routine booking procedure in Hennepin County seems to me to potentially be a problem because we have to guess as to whether or not there would be a warrant issued and whether the officer would seek a warrant. Well, he testified he would. There's no guessing about it, and that was uncontradicted. And I know from my own experience that that's what they do all the time. They go get a warrant if there's no consent. And I've never seen one that wasn't granted either. But you don't even have to get there because the consent is so clear here. But I do want to touch on this Rehiath issue. I was never directed to file a brief on this. The clerk said that you would take the issue of the supplemental brief under consideration. That's right. But since it's been raised, or do you want me to argue that? It wasn't argued. It was raised as an issue before us. It's before us only in a pro se supplemental brief that has not been ruled on yet. Well, I think it's actually a council's pro se supplemental brief. And she said that was one of her three issues. Oh, I don't even have that. I have appellant's brief pro se April 8, 2019. What am I missing? Well, I believe that there was a council put in a supplemental brief as well based on Rehiath. And she just said that was one of her three issues. I just want to make a record here that if you want the answer to the Rehiath claim, just look at the defendant's own appeal brief at page 9 of the addendum. Because the issue in Rehiath is does the defendant know he's been convicted of a crime punishable by more than one year? And Judge Montgomery said as a finding of fact in her order, Officer Werner asks, this is during that interview, post-arrest interview I just talked about. One of the first questions was, Officer Werner asks, you're a felon, correct? So you're not allowed to touch any guns? Answer, yes. So that takes care of the Rehiath claim right there. You're arguing essentially substantial rights then. Yeah. And I could go on because if you look at the PSR, all of his prior convictions were for well over a year. I think the shortest was 36 months. The longest was 60 months. There's about five of them. There's no argument possible that he didn't know he was convicted of a crime punishable by more than one year. And even in these supplemental briefs, they don't claim he's innocent of that element. They just say we didn't prove it. And under Hollingshead and other cases from this court, it's a prejudice, a substantial rights violation that has to be shown. And he can't show that. Well, my time is up. So I yield back my last two seconds, as they say on TV. Very good. For rebuttal. Thank you, Your Honor. Your Honor, just to clear up the record, on July 30, 2019, counsel filed a motion for leave to file the supplemental brief with the supplemental brief attached. And the government is correct that we received an order that that issue would be considered with the panel when it was submitted for disposition on the merits. I just want to make a couple points. As to the consent issue, you know, the government said that in Pena-Saez, that after multiple times the government said, well, we're going to do it anyway. I don't believe that's correct. I believe what the testimony was that officers told the defendant, that's what we do. We talk to people. We search people's bags. We pet search people. That's what we do every day, which I believe is analogous to what we had in our case, where the officer is instructing that it's policy and procedure and misleading the defendant that he did not have the right to withhold consent. As to, Your Honor, that's my time. Thank you. Just briefly as to the inevitable discovery, I just think that the relying on an assumption that the officer would and could obtain a warrant is not sufficient under Connor to dispense with the warrant requirement for the search. And I thank you for my time, and we request remand. Thank you, Counsel. The case has been very well briefed.